Non-authoritative copy



# BMW FINANCIAL SERVICES NA, LLC
# MOTOR VEHICLE RETAIL INSTALLMENT CONTRACT

## TABLE OF CONTENTS


| | |
|---|---|
| **1. Identification of Parties** | Section 1, Page 2 |
| a. Addresses of the Parties | Section 1, Page 2 |
| b. Date of Contract | Section 1, Page 2 |
| c. Key Terms Relating to Parties & Contract | Section 1, Page 2 |
| **2. Information Identifying the Vehicle** | Section 2, Page 2 |
| **3. Truth-in-Lending Disclosures** | Section 3, Page 2 |
| a. Credit Disclosures & Payment Schedule | Section 3, Page 2 |
| b. Security | Section 3, Page 2 |
| c. Late Charge | Section 3, Page 2 |
| d. Prepayment | Section 3, Page 2 |
| **4. Reserved** | Section 4, Page 2 |
| **5. Itemization of the Amount Financed** | Section 5, Page 3 |
| **6. Optional Service Contracts** | Section 6, Page 3 |
| **7. Optional Credit Insurance** | Section 7, Page 3 |
| **8. Optional Guaranteed Auto Protection Insurance** | Section 8, Page 4 |
| **9. Insurance Verification & Authorization** | Section 9, Page 4 |
| **10. Balloon Payment Options** | Section 10, Page 4 |
| **11. Payments & Security Interest** | Section 11, Page 4 |
| a. Simple Interest Contract Defined | Section 11, Page 4 |
| b. Late and Returned Payment Charges | Section 11, Page 4 |
| c. Security Interest | Section 11, Page 4 |
| **12. Vehicle Insurance** | Section 12, Page 4 |
| a. Required Insurance | Section 12, Page 4 |
| b. Refund of Insurance or Other Charges | Section 12, Page 4 |
| **13. Warranties and Vehicle Use** | Section 13, Page 4 |
| a. Warranties | Section 13, Page 4 |
| b. Vehicle Use | Section 13, Page 4 |
| **14. Default** | Section 14, Page 5 |
| a. Events of Default | Section 14, Page 5 |
| b. Remedies | Section 14, Page 5 |
| **15. Power of Attorney** | Section 15, Page 5 |
| **16. Additional Terms, Entire Agreement** | Section 16, Page 5 |
| **17. Federal Trade Commission Notices** | Section 17, Page 5 |
| **18. Arbitration Clause** | Section 18, Page 5 |
| **19. Buyer Notices & Contract Signatures** | Section 19, Page 7 |
| **20. Seller Signature** | Section 20, Page 7 |


Non-Authoritative Copy

[redacted]

Non-authoritative copy


# BMW Financial Services NA, LLC

## Motor Vehicle Retail Installment Contract - New Jersey

### 1. PARTIES

| BUYER(S) | SELLER |
|---|---|
| BUYER(S) Name: SHIREEN SHAW | Name: BMW of Turnersville |
| Address (include County and Zip Code): 25 STONE HOLLOW DR, SICKLERVILLE NJ 08081 | Address: 3400 ROUTE 42, TURNERSVILLE NJ 08012 |
| Billing Address (if different): | DATE OF CONTRACT 03/06/2026 |

This Motor Vehicle Retail Installment Contract ("Contract") is entered into between the buyer(s) ("Buyer") and the seller ("Seller") named above. Unless otherwise specified or required by context, "I", "me" and "my" refer to the Buyer and "you" and "your" refer to the Seller or Seller's assignee. "Vehicle" refers to the vehicle described below. I promise to pay the Seller the Amount Financed plus the Finance Charge calculated at the Annual Percentage Rate shown below according to the Payment Schedule shown below. I acknowledge that I am purchasing the Vehicle from the Seller on an installment basis and accept the Vehicle in its present condition, including all its equipment, parts and accessories.

### 2. VEHICLE

| ☑ New / ☐ Used | Year | Make | Model | Vehicle Identification Number | Odometer Reading | ☑ Personal Use / ☐ Business Use |
|---|---|---|---|---|---|---|
| New | 2026 | BMW | M235 xDrive Gran Coupe | WBA33GG09T7U02966 | 21 | Personal Use |

☐ CD Player ☐ N/A (specify) ☐ N/A (specify) ☐ N/A (specify)

### 3. CREDIT DISCLOSURES

e=estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. | The total cost of my purchase on credit, including my down payment of $1,000.00. |
| 4.99 % | $ 11,009.70 e | $ 68,118.30 | $ 79,128.00 e | $ 80,128.00 e |

**PAYMENT SCHEDULE**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1,099.00 | Monthly, beginning 04/20/2026 |
| 1 Balloon Payment (if applicable) | N/A | N/A |

**SECURITY.** I am giving a security interest in the Vehicle.
**LATE CHARGE.** If all or any portion of a payment is more than 10 days late, I will be charged $10.
**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

Please read all pages of this Contract, for additional information on security interests, nonpayment, default, and the right to require repayment in full before the scheduled maturity date.

### 4. RESERVED

Non-Authoritative Copy

Non-authoritative copy


## 5. ITEMIZATION OF THE AMOUNT FINANCED

**A. CASH PRICE**

| | | |
|---|---|---|
| (1) Cash Price of Vehicle and Accessories | $ | 54,453.99 |
| (2) Other (Describe) Documentation Fee | + | 699.00 |
| (3) Other (Describe) N/A | + | 0.00 |
| (4) Other (Describe) N/A | + | 0.00 |
| (5) Cash Price | | 55,152.99 |
| (6) Sales Tax | + | 342.47 |
| Sales Tax is Calculated on the following: | | |
| (a) Cash Price (A(5)) | $ | 55,152.99 |
| (b) Allowance on Trade-in | - | 50,000.00 |
| (c) Adjusted Cash Price | = | 5,152.99 |
| (7) Total Cash Price (A(5) plus A(6)) | = | 55,495.46 |

**B. DOWN PAYMENT**

| | | |
|---|---|---|
| (1) Net Value of Trade-In (Gross Allowance $ 50,000.00 Payoff $ 61,720.70) (Year 2024 Make BMW Model X4 M40I) | $ | 0.00 |
| (2) Cash Down Payment | + | 0.00 |
| (3) Manufacturer's Rebate Assigned to Seller | + | 1,000.00 |
| (4) Other (Describe) N/A | + | 0.00 |
| (5) Total Down Payment | = | 1,000.00 |

**C. UNPAID BALANCE OF CASH PRICE** (A(7) minus B(5)) $ 54,495.46

**D. AMOUNTS PAID TO OTHERS ON MY BEHALF**

| | | |
|---|---|---|
| (1) To Public Officials: | | |
| (a) License, Title, and Registration Fees | $ | 427.82 |
| (b) Additional Title Fee for Notation of Lien | + | 0.00 |
| (c) Tire Fee | + | 7.50 |
| (d) Other Official Fees (Describe) | | |
| To State of NJ For Supplemental Tit | + | 217.82 |
| To N/A For N/A | + | 0.00 |
| To N/A For N/A | + | 0.00 |
| (2) To Insurance Companies For: | | |
| (a) Credit Life/Accident and Health Insurance | + | 0.00 * |
| (b) Other Insurance (Describe) N/A | + | 0.00 * |
| (3) Other Charges: | | |
| (a) To BMW GAP For GAP | + | 1,249.00 * |
| (b) To NAVY FEDERAL CU For PAYOFF | + | 11,720.70 * |
| (c) To N/A For N/A | + | 0.00 * |
| (d) To N/A For N/A | + | 0.00 * |
| (e) To N/A For N/A | + | 0.00 * |
| (f) To N/A For N/A | + | 0.00 * |
| (g) To N/A For N/A | + | 0.00 * |
| (h) To N/A For N/A | + | 0.00 * |
| (4) Total Amounts Paid to Others on My Behalf | = | 13,622.84 |

**E. AMOUNT FINANCED** (C plus D(4)) $ 68,118.30

*Seller and/or Seller's affiliates may retain or receive a portion of these amounts.

**THE SELLER MAY ASSIGN THIS CONTRACT AND RECEIVE A FEE OR OTHER CONSIDERATION FOR FACILITATING THIS FINANCING.**

## 6. SERVICE CONTRACT

**A service contract is not required to obtain credit and will not be provided unless I sign and agree to pay the cost.** The service contract issued by the Provider will describe the terms and conditions in further detail. By signing below, I agree to purchase the service contract for the term and cost indicated.

Provider: N/A Cost: $ 0.00 Term: 0 months or 0 miles, whichever occurs first.

Provider: N/A Cost: $ 0.00 Term: 0 months or 0 miles, whichever occurs first.

Provider: N/A Cost: $ 0.00 Term: 0 months or 0 miles, whichever occurs first.

Provider: N/A Cost: $ 0.00 Term: 0 months or 0 miles, whichever occurs first.

Provider: N/A Cost: $ 0.00 Term: 0 months or 0 miles, whichever occurs first.

X N/A
Buyer's Signature

X N/A
Buyer's Signature

## 7. CREDIT INSURANCE

**Credit life or credit accident and health insurance is not required to obtain credit and will not be provided unless I sign and agree to pay the premium.** My decision to obtain (or not obtain) credit insurance is not a factor in granting credit and does not affect your credit decision. The policies or certificates issued by the insurer will describe the terms and conditions in further detail. By signing below, I agree to pay for the following insurance for the terms and premiums indicated.

☐ I want Credit Life Insurance (One Buyer only) Term 0 mos. Premium $ 0.00 Insured Name: N/A

☐ I want Joint Credit Life Insurance Term 0 mos. Premium $ 0.00 Insured Name: N/A

Insured Name: N/A

☐ I want Credit Accident and Health Insurance (One Buyer only) Term 0 mos. Premium $ 0.00 Insured Name: N/A

Name of Insurer(s): N/A

X N/A
Buyer's Signature

X N/A
Buyer's Signature

Non-Authoritative Copy

[redacted]

Non-authoritative copy



## 8. OPTIONAL GAP CONTRACT ("GAP")

**GAP is not required to obtain credit and I may purchase it from anyone I want who is reasonably acceptable to the Seller.** I may purchase GAP under this Contract by signing below and agreeing to pay the purchase price, shown in Section 5.D above. See my GAP contract for details on the protection it provides.

Term 72 mos. Name of GAP Contract BMW GAP

X S Shaw N/A
Buyer's Signature

X N/A
Buyer's Signature

## 9. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 12. I affirm that such insurance is in force on the date of this Contract. I authorize Seller and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the Vehicle.

| Insurance Company | Policy No. | Coverage Verified (Center Employee's Initials) |
| --- | --- | --- |
| GEICO | N/A | [initials] |

| Agent Name | Address | Phone No. |
| --- | --- | --- |
| N/A | N/A | [redacted] |

All matters regarding insurance should be sent by [redacted]

## 10. BALLOON PAYMENT OPTIONS

This paragraph applies if a Balloon Payment is shown in the Payment Schedule in Section 3. This paragraph applies to a Balloon Payment, which is a final payment that is more than twice as large as the average of all prior scheduled payments (excluding any down payment). The Balloon Payment option is only available if the Amount Financed under this Contract exceeds $10,000. Provided that I am not in default under this Contract (see Section 14), when my Balloon Payment is due, I may either: (a) pay the amount I owe under this Contract when the Balloon Payment is due in full in cash; or (b) if I qualify, refinance the amount I owe under this Contract when the Balloon Payment is due with you, at your then prevailing rates, terms and conditions.

## 11. PAYMENTS AND SECURITY INTEREST

**A. SIMPLE INTEREST CONTRACT.** I understand that this is a simple interest contract. The amount of the Finance Charge and the amount owed on this Contract on the final payment due date shown in Section 3 may vary depending upon when payments are received. The earlier that payments are received before each due date, the less Finance Charge I owe. The later that payments are received after each due date, the more Finance Charge I owe. Payments are first credited to accrued Finance Charge and then to the unpaid balance of the Amount Financed. After my last payment, you will advise me of any amounts owed or refund any amounts owed to me.

**B. LATE CHARGE AND RETURNED PAYMENT CHARGE.** If you do not receive my total monthly payment or any other payment within 10 days after it is due, I agree to pay the late charge described in Section 3 of this Contract, but not exceeding any limit under applicable law. If any check, draft or order or other similar instrument or any electronic payment is returned to you unpaid for any reason, including, but not limited to, non-sufficient funds, I will be liable for a returned payment charge of $20.

**C. SECURITY INTEREST.** I grant you a security interest in: (1) the Vehicle; (2) all proceeds of such property; and (3) to the extent permitted by state law, the loss proceeds of any vehicle insurance and, if the cost is included in the monthly payment under this Contract, the proceeds, cancellation refunds or rights of any service or mechanical breakdown protection contract, maintenance contract, extended warranty, or any optional products. This security interest secures payment and performance of my obligations under this Contract, or any extensions of this Contract, including any indebtedness subsequently arising because of my failure to perform such obligations.

I agree to fully cooperate with you to perfect your security interest in the Vehicle, including, but not limited to, paying applicable titling and registration fees, obtaining a smog and/or safety inspection from an authorized inspection station, obtaining applicable inspections of the vehicle identification number from the appropriate law enforcement or other government official(s), and providing you with inspection certificates and other documents necessary to perfect your security interest.

## 12. VEHICLE INSURANCE

**A. REQUIREMENTS.** For the term of this Contract I must obtain and maintain insurance coverage for loss of or physical damage to the Vehicle (comprehensive, collision, fire and theft coverage) in the amount equal to the actual cash value of the Vehicle. The maximum deductible allowed for collision and comprehensive coverages is $1000. **I have the option of obtaining this insurance through an insurer of my choice that is reasonably acceptable to you.** I must designate you as loss payee on such insurance. The policy must provide you with at least 30 days advance notice of any amendment to or cancellation of coverage. I authorize you to execute in my name any proofs of insurance claims or losses and to endorse my name on any insurance settlement draft or check. I must furnish satisfactory evidence that the Vehicle continues to be adequately covered by physical damage insurance for the entire term of this Contract. I agree that, at your election, you can use any proceeds from insurance to repair the Vehicle or to reduce the amount that I owe on this Contract.

**THIS DOES NOT INCLUDE INSURANCE ON MY LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, I MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**B. INSURANCE OR OTHER CHARGES RETURNED.** I agree that if you receive any refund on any optional insurance, maintenance, service, or any other contracts or products financed under this Contract, you may use the refund to reduce the amount I owe on this Contract. Any remaining credits totaling $1 or more will be refunded to me.

## 13. WARRANTIES AND VEHICLE USE

**A. WARRANTIES. The Seller is not offering any express warranties unless the Seller has given a written warranty to me. If the Seller extends, or the Vehicle's manufacturer extends, a written warranty or service contract covering the Vehicle within 90 days from the date of this Contract, I get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle. If not, the Seller specifically disclaims any implied warranties of merchantability and fitness for a particular purpose covering the Vehicle.**

**B. VEHICLE USE.** I agree that I will: (1) not garage the Vehicle at an address other than the address shown on this Contract without your written consent and will notify you of changes in my address; (2) not sell the Vehicle without your written consent; (3) except for less than 30 days in Canada, not operate the Vehicle outside of the contiguous United States and Alaska and Hawaii; (4) not allow a lien to be placed upon the Vehicle; (5) not abandon the Vehicle or use it for hire or illegally; (6) maintain the Vehicle in good condition and have the Vehicle serviced and maintained in accordance with the manufacturer's recommendations and specifications, so long as I have obligations under this Contract; (7) permit you to inspect the Vehicle at any reasonable time; and

Non-authoritative Copy

[redacted]

Non-authontative copy



(8) pay when due all taxes and assessments levied on the Vehicle. Should I fail to promptly pay any lien, encumbrance or taxes on the Vehicle, you may do so on my behalf. In such event I must immediately reimburse you for the cost thereof. If I do not immediately reimburse you, such cost, plus interest at a rate not to exceed the Annual Percentage Rate shown in Section 3 of this Contract, will be added to the amount I owe under this Contract.

## 14. DEFAULT

**A. DEFAULT.** I will be in default under this Contract if: (1) I fail to make any payment in full when due or fail to pay any other charge; (2) I fail to keep any of my promises under this Contract or in any other agreement I have with the Seller or Seller's assignee; (3) I die, am declared incompetent or become insolvent, a bankruptcy petition is filed by or against me, or I dissolve or cease active business affairs; (4) I give the Seller false or misleading information in my credit application or any other document; (5) the Vehicle is destroyed, stolen or damaged beyond repair; (6) I fail to keep required insurance in force; (7) the Vehicle is subject to or threatened by seizure, confiscation, levy, or other involuntary transfer by governmental, administrative or legal process; (8) my driver's license expires or is suspended, revoked, canceled or is otherwise restricted; or (9) anything else happens that you reasonably believe in good faith endangers the Vehicle.

**B. REMEDIES.** If I am in default, you may demand that I pay all amounts I owe under this Contract at once (accelerate), and may pursue any and all of your other rights and remedies available under the law. Your remedies can be exercised singularly or in any combination. If you refer my obligation for collection to an attorney who is not one of your salaried employees, I agree to pay, in addition to all other sums due and owing under this Contract, reasonable attorneys' fees not exceeding any limit under applicable law plus court costs. If I am in default, you may also repossess the Vehicle as permitted by law, in which event I may be entitled to get it back (redeem) by making timely payment of charges (such as costs of retaking, repairing, and storing the Vehicle) incidental to the repossession to the extent permitted by law plus the accelerated amount owed under this Contract, including, the unpaid Amount Financed, Finance Charges and any other fees, charges, and amounts owed under this Contract, in full. If the Vehicle is sold, the proceeds will be applied first to reasonable expenses of repossessing, reconditioning, storing and selling the Vehicle, including attorneys' fees and legal expenses to the extent permitted by law, and then to all amounts due under this Contract. If there is any money left over, it will be paid to me, subject to the rights of any other secured parties. If the proceeds of the sale of the Vehicle are insufficient to pay all amounts due to you, including the costs and expenses of repossession and sale, I will be liable for any deficiency to the extent permitted by applicable law. Any personal property of mine in or attached to the Vehicle which is not subject to your security interest shall be held by you without liability if the Vehicle is repossessed. Unless I provide you with written demand delivered by certified mail within 10 days after repossession of the Vehicle, I waive any claims I may have to my personal property.

If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.

## 15. POWER OF ATTORNEY

If the Total Cash Price of the Vehicle exceeds $10,000, I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Contract are paid in full. As myattorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits or any other documents required to register and properly perfect your security interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession and sale; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Accident and Health, Guaranteed Automotive Protection Coverage, Extended Warranty, or any other optional products financed under this Contract, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and promptly provide you with the same.

## 16. ADDITIONAL TERMS

I understand that: (A) I have no right to assign any of my rights under this Contract, although you may assign your interests under this Contract without my consent; (B) you may waive or delay the enforcement of your rights under this Contract without affecting your rights on future defaults; (C) any portion of this Contract which may be held unenforceable shall not affect the enforceability of other portions of this Contract; (D) if more than one buyer has signed this Contract, each one will be jointly and severally liable for all obligations under this Contract; (E) all correspondence and notices will be sent to me at my Billing Address shown on this Contract unless I give you a different address in writing; and (F) except as provided in the Arbitration Clause below (Section 18), this Contract will be governed by applicable federal law and the laws of the state of the Seller's place of business shown in Section 1 of this Contract. **This Contract describes all of the agreements with respect to the retail installment sale of the Vehicle between the Seller and me and all prior agreements, whether oral or in writing, are superseded. This Contract cannot be changed or terminated by any oral agreement.**

## 17. FTC NOTICES

If the Vehicle is a used vehicle, the following notice applies:

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

The following notice does not apply if the Vehicle is purchased for business use:

**NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## 18. ARBITRATION CLAUSE

**PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS**

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

"**Claim**" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, the sale, purchase, lease, or condition of the Vehicle, this Contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. "Claim" does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Claim" also does not include the exercise of any self-help remedies; any individual action in a court limited to preventing another party from exercising a self-help remedy if the action does not involve a request for damages or any other monetary relief of any kind; or any action for replevin of the Vehicle. Moreover, this Arbitration Clause will not apply to any Claims that are the subject of (a) a class action filed in court that is pending as of the effective date of this Arbitration Clause in which I am alleged to be a member of the putative class (however, you and I will continue to be bound by any prior Arbitration Clause) or (b) a motion to compel arbitration filed by you against me before the effective date of this Arbitration Clause pursuant to a prior Arbitration Clause (however, you and I will continue to be bound by any prior Arbitration Clause).

**Class Action Waiver. Notwithstanding any other provision of this Contract or Arbitration Clause, if either you or I elect to arbitrate a Claim,**

Non-Authoritative Copy

[redacted]

Non-authoritative copy


**neither you nor I will have the right: (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision. (Provided, however, that the Class Action Waiver does not apply to any lawsuit or administrative proceeding filed against you by a state or federal government agency even when such agency is seeking relief on behalf of a class including me. This means that you will not have the right to compel arbitration of any claim brought by such an agency.) The Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this Arbitration Clause. If the Class Action Waiver is limited, voided or found unenforceable, then this Arbitration Clause (except for this sentence) shall be null and void with respect to such proceeding, notwithstanding any other provision of this Contract, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

[redacted] on their websites or by writing to these organizations at the addresses listed above. Either you or I may request an expedited hearing under the applicable rules. If the AAA and JAMS are unable or unwilling to serve as administrator, or we mutually agree not to utilize the AAA and JAMS for whatever reason, we may agree upon another arbitration administrator or, if we are unable to agree, a court shall determine the administrator. No company may serve as administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Clause. If the chosen administrator's rules or other provisions of this Contract (including any other arbitration provision relating to this Contract) conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. If a party files a lawsuit in court asserting any Claim that is subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim to select an arbitration administrator in accordance with this paragraph and commence the arbitration proceeding in accordance with the administrator's rules and procedures.

Arbitrators shall be attorneys with at least ten years of experience or retired judges and shall be selected pursuant to the applicable rules. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court or by state or local laws that relate to arbitration proceedings. The arbitrator will honor statutes of limitation and claims of privilege recognized under applicable law. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), that would apply if the matter had been brought in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts). The arbitrator may award any damages or other relief or remedies permitted by applicable law including equitable, temporary and/or provisional remedies. The arbitrator shall write a brief explanation of the grounds for the decision. Any arbitration hearing that I attend shall be conducted at a place reasonably convenient to where I reside. Any court having jurisdiction may enter judgment on the arbitrator's award.

In any arbitration that I have commenced against you, if the total amount of my Claim(s) is less than $25,000: (a) you will pay any and all fees and costs of the arbitration administrator and/or the arbitrator if I make a written request for you to pay such fees; and (b) you will pay my reasonable attorneys' and expert witness fees and costs if and to the extent I prevail in the arbitration in an amount as determined by the arbitrator. Except as provided above, we shall each pay such fees and costs of the arbitration administrator and/or the arbitrator as provided by the rules of the arbitration administrator, including, if applicable, the arbitration administrator's rules or fee and cost allocations for consumer-related arbitrations. Except as provided above, you and I shall each be responsible for our own attorneys' and expert witness fees, unless such fees are awarded in the arbitration by the arbitrator under applicable state or federal law.

The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the FAA. If the amount of the Claim exceeds $100,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $100,000, however, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The appealing party shall be responsible for the filing fee and other arbitration costs for the appeal panel, which fee and costs may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

You and I may retain any rights to self-help remedies, such as repossession. Neither the exercise of any self-help remedies nor any individual action in court by one party limited solely to preventing the other party from using a self-help remedy and without any claim for damages or any other monetary or equitable relief is subject to arbitration. Neither you nor I waive the right to arbitrate by using self-help remedies.

This Arbitration Clause shall survive any termination, payoff, or transfer of this Contract and shall also survive any bankruptcy to the extent consistent with applicable bankruptcy law. If any part of this Arbitration Clause, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. This Contract involves interstate commerce and this Arbitration Clause and any arbitration hereunder shall be governed by the FAA and not by any state law concerning arbitration. However, the governing law as to the substantive issues concerning this Contract and the Vehicle shall be the law of the state of the Seller's place of business shown in Section 1 of this Contract and applicable federal law.

Notwithstanding any other provision for notice contained in this Contract, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Seller, I agree that notice of my Claim will be given to the Seller at the address specified in Section 1 of this Contract. If my Claim is against the Assignee (designated in Section 20 of this Contract), I agree that notice of my Claim will be given at 1400 City View Drive, Columbus, Ohio 43215. If my Claim is against both the Seller and the Assignee, I agree that both the Seller and the Assignee will be notified of my Claim at the addresses indicated herein.

Non-Authoritative Copy

Non-authoritative copy



**Electronic Contracting and Signature Acknowledgment.** Electronic Contracting and Signature Acknowledgment. I agree that (i) this Contract is an electronic contract executed by me using my electronic signature, (ii) my electronic signature signifies my intent to enter into this Contract and that this Contract be legally valid and enforceable in accordance with its terms to the same extent as if I had executed this Contract using my handwritten signature and (iii) the authoritative copy of this Contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by you for the storage of Authoritative Copies of electronic records, which shall be deemed held by you in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted into a paper copy which is marked by you as the original (the "Paper Contract"), then I acknowledge and agree that (1) my signing of this Contract with my electronic signature also constitutes issuance and delivery of such Paper Contract, (2) my electronic signature associated with this Contract, when affixed to the Paper Contract, constitutes my legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, my obligations will be evidenced by the Paper Contract alone.

## 19. BUYER NOTICES AND CONTRACT SIGNATURES

**IMPORTANT: READ THE ADDITIONAL TERMS ON ALL PAGES OF THIS CONTRACT BEFORE SIGNING BELOW.**

**NOTICE TO RETAIL BUYER: DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO A COPY OF THE CONTRACT AT THE TIME YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

By signing below, I agree to all the terms of this Contract. I also acknowledge and agree to the Arbitration Clause in Section 18 of this Contract.

**I ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

| | |
|---|---|
| Buyer's Signature: **X** Date: | Buyer's Signature: **X** N/A Date: N/A |

## 20. SELLER SIGNATURE

The authorized signature of the Seller has the effect of: (1) accepting the terms and conditions of this Contract; (2) acknowledging verification of the existence of the insurance coverage required by this Contract with the Buyer's insurance agent; and (3) assigning this Contract to BMW Bank of North America, a wholly owned subsidiary of BMW Financial Services NA, LLC (collectively, "Assignee"), 1400 City View Drive, Columbus, Ohio 43215, subject to the provisions of the Center Agreement between the Seller and Assignee. The Seller shall not be an agent of Assignee for any purpose.

| | |
|---|---|
| Authorized Signature: **X** Date: | Title: Authorized Signer |

Non-Authoritative Copy

[redacted]